# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| INDEPENDENCE EXCAVATING, INC., | ) | CASE NO. 1:09-cv-02114 |
| | ) | |
| | ) | JUDGE POLSTER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIDGEVIEW CROSSING LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

---

## MEMORANDUM IN SUPPORT OF ROBERT W. BAIRD & COMPANY'S MOTION TO DISMISS

---

# <u>TABLE OF CONTENTS</u>

I.          INTRODUCTION ............................................................................................. 1

II.         RELEVANT FACTS ...................................................................................... 2

III.        LAW AND ARGUMENT ............................................................................... 4

      A.    Count XIV of the Amended Complaint Alleging Negligence Must Be
            Dismissed. ............................................................................................ 5

      B.    Count XV of the Amended Complaint Alleging Intentional
            Misrepresentation Must Be Dismissed. ................................................ 9

            1.    Plaintiff has not adequately pled either representation or
                  concealment of fact, a required element of an intentional
                  misrepresentation claim. ............................................................11

            2.    Plaintiff has not adequately pled justifiable reliance, a required
                  element of an intentional misrepresentation claim. ...................14

            3.    Plaintiff has not adequately pled that Baird was the proximate
                  cause of its injuries, a required element of an intentional
                  misrepresentation claim. ...........................................................15

            4.    Plaintiff has not pled its intentional misrepresentation claim with
                  the required particularity..........................................................16

      C.    Count XVI of the Amended Complaint Alleging Civil Conspiracy Must
            Be Dismissed. ..................................................................................... 17

      D.    Count  XVII of the Amended Complaint, the RICO Claim, Must Be
            Dismissed............................................................................................ 20

            1.    Plaintiff fails to plead the alleged predicate acts adequately. ....................20

            2.    Plaintiff fails to state a claim for a RICO section 1962(b) claim...............22

                  a.    Plaintiff did not adequately plead acquisition or
                        maintenance of an interest or control of an "enterprise." ............. 22

                  b.    Plaintiff did not adequately allege the existence of an
                        "enterprise." .................................................................... 22

                  c.    Plaintiff has not adequately pled a "pattern of racketeering
                        activity."........................................................................... 25

i

        d.      Plaintiff has not adequately pled injury to business or property "by reason of" a violation of § 1962(b)........................ 26

    3.      Plaintiff fails to state a claim for a RICO section 1962(c) claim...............27

E.    Count XVIII of the Amended Complaint Alleging Conversion Must Be Dismissed. ........................................................................................................ 28

F.    Count XIX of the Amended Complaint Alleging Equitable Subordination Must Be Dismissed. ............................................................................................ 29

## TABLE OF AUTHORITIES

**Cases**

*Abrams v. Worthington*,
169 Ohio App. 3d 94 (Franklin Cty. 2006)................................................................. 7

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*,
176 F.3d 315 (6th Cir. 1999) ................................................. 11, 17, 22

*Anthony v. Chi. Title Ins. Co.*,
2007 U.S. Dist. LEXIS 28028, *9 (S.D. Ohio Apr. 16, 2007) ................................ 28

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009).............................................................................. 4, 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................ 5, 18

*Boyle v. U. S.*,
129 S.Ct. 2237 (2009)................................................................................... 23

*Burr v. Stark Cty. Bd. of Comm'rs.*,
23 Ohio St. 3d 69 (1986) .......................................................................... 10

*Central States Stamping Co. v. Terminal Equipment Co., Inc.*,
727 F.2d 1405 (6th Cir. 1984) ..................................................................... 15

*City of Findlay v. Hotels.com, L.P.*,
441 F.Supp.2d 855 (N.D. Ohio 2006)............................................................ 28

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
541 F.3d 425 (2d Cir. 2008) ..................................................................... 27

*Columbia Natural Resources, Inc. v. Tatum*,
58 F.3d 1101 (6th Cir. 1995) ..................................................................... 25

*Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp.*,
57 F.3d 56 (1st Cir. 1995)......................................................................... 22

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
941 F.2d 1220 (D.C. Cir. 1991)..................................................................... 26

*Fed. Ins. Co. v. Webne*,
513 F. Supp.2d 921 (N.D. Ohio 2007)........................................................ 21, 22

*Figueroa Ruiz v. Alegria*,
896 F.2d 645 (1st Cir. 1990)...................................................................... 20

iii

*First Capital Asset Mgmt., Inc. v. Satinwood,*
    385 F.3d 159 (2d Cir. 2004) ........................................................................... 23

*Foundation for Moral Law v. Infocision Mgmt. Corp.,*
    2008 U.S. Dist. LEXIS 108117, *3-4 (N.D. Ohio May 27, 2008) ..................................... 10, 21

*Gaymar Indus. v. Firstmerit Bank,*
    311 Fed. Appx. 814 (6th Cir. 2009) .................................................................... 29

*Gedeon v. East Ohio Gas Co.,*
    128 Oho St. 335 (Ohio 1934) ........................................................................... 7

*Gosden v. Louis,*
    116 Ohio App. 3d 195, 687 N.E.2d 481 (Ohio Ct. App. 1996) ........................................ 19

*Groob v. KeyBank,*
    108 Ohio St. 3d 348 (2006) ................................................................. 10, 11, 13, 14

*Guarantee Co. v. City of Cleveland,*
    1997 U.S. Dist. LEXIS 15285 (N.D. Ohio Sept. 24, 1997) ..................................... 11, 12, 13

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) .................................................................................. 25, 26

*Hadfield-Penfield Steel Co. v. Sheller,*
    108 Ohio St. 106 (1923) ................................................................................. 6

*Hollar v. Philip Morris Inc.,*
    43 F. Supp. 2d 794 (N.D. Ohio 1998) .................................................................. 18

*Infocision Mgmt. Corp. v. Found. For Moral Law, Inc.,*
    2009 U.S. Dist. LEXIS 23640 at * 20 (N.D. Ohio Jan. 14, 2009) ..................................... 21

*Interim Healthcare of Northeast Ohio, Inc. v. Interim Services, Inc.,*
    12 F.Supp.2d 703 (N.D. Ohio 1998) .................................................................... 6

*Javitch v. Capwill,*
    284 F.Supp.2d 848 (N.D. Ohio 2003) .................................................................. 24

*Leeds v. City of Muldraugh,*
    174 Fed. Appx. 251 (6th Cir. 2006) ................................................................... 21

*Lucas-Cooper v. Palmetto GBA,*
    2006 U.S. Dist. LEXIS 77575, at *8 (N.D. Ohio Oct. 25, 2006) ..................................... 27

*Martin v. Ohio State Univ. Found.,*
    139 Ohio App. 3d 89 (Franklin Cty. 2000) ............................................................. 15

iv

*McGill v. Newark Surgery Ctr.*,
    756 N.E.2d 762 (Licking Cty 2001) ...................................................... 6

*Michaels Bldg. Co., et. al. v. Ameritrust Co., et. al.*,
    848 F.2d 674 (6th Cir. 1988) ........................................................... 11

*Miranda v. Ponce*,
    948 F.2d 41 (1st Cir. 1999)............................................................. 20

*Morgan v. Chruch's Fried Chicken*,
    829 F.2d 10 (6th Cir. 1987) ......................................................... 4, 19

*NOW v. Scheidler*,
    510 U.S. 249 (1994).................................................................... 23

*Quelimane Co. v. Stewart Title Guaranty Co.*,
    19 Cal.4th 26, 960 P.2d 513 (Cal. App. 1998) ......................................... 6

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).................................................................... 27

*Sanderson v. HCA*,
    447 F.3d 873 (6th Cir. 2006.......................................................... 11, 19

*Simmers v. Bentley Constr. Co.*,
    64 Ohio St. 3d 642 ...................................................................... 7

*Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) .......................................................... 11

*U. S. v. Turkette*,
    452 U.S. 576 (1976) .................................................................... 23

*Ullmo ex rel. Ullmo v. Gilmour Academy*,
    273 F.3d 671 (6th Cir. 2001) .......................................................... 15

*VanDenBroeck v. CommonPoint Mortgage Co.*,
    210 F.3d 696 (6th Cir. 2000) .......................................................... 24

*Waltz v. Badger Technology,*
    2003 Cal. App. Unpub. LEXIS 7544 (Cal. App.  August 5, 2003) ........................ 7

*Williams v. Aetna Fin. Co.*,
    83 Ohio St. 3d 464, 700 N.E.2d 859 (1998) ......................................... 18, 19

*Williams v. ITT Financial Services*,
    1997 Ohio App. LEXIS 2721, *11 (Hamilton App. 1997)................................... 19

*Yuhasz v. Brush Wellman, Inc.*,
   341 F.3d 559 (6th Cir. 2003) ............................................................................... 11

**Statutes**

§ 1962.......................................................................................................................... 22

§ 1962(c) ..................................................................................................................... 27

§ 1964(c) ..................................................................................................................... 26

15 U.S.C. § 77k(c) ....................................................................................................... 7

18 U.S.C. § 1341 ......................................................................................................... 21

18 U.S.C. § 1962(b) ............................................................................................... 20, 26

18 U.S.C. § 1962(c) .................................................................................................... 20

U.S.C. §1961(4) ......................................................................................................... 23

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................... 21

Rule 12(b)(6)................................................................................................................. 1

**MEMORANDUM IN SUPPORT OF
ROBERT W. BAIRD & COMPANY'S
MOTION TO DISMISS**

The Amended Complaint of Plaintiff Independence Excavating, Inc. ("Plaintiff") fails to state a plausible claim against Defendant Robert W. Baird & Company Incorporated ("Baird") under any of the sundry legal theories pled in the Amended Complaint, and Baird respectfully requests dismissal of all claims against it pursuant to Rule 12(b)(6).  Specifically, Baird seeks dismissal of the putative claims against it in Count XIV (negligence), Count XVI (civil conspiracy claim), Count XVII (RICO), Count XVIII (conversion), and Count XIX (equitable subordination).  Baird also seeks dismissal of Count XV, (misrepresentation), pursuant to both Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

This is a case about nothing more than unpaid bills and disappointed expectations. Plaintiff, a building contractor, contracted with a private developer to perform work associated with a retail shopping center that was to be funded partially by proceeds from municipal bonds underwritten by Baird.  However, the bonds never issued, the project stalled, and apparently Plaintiff was not paid for work performed.

Giving Plaintiff every benefit of the doubt, these facts might give rise to a breach of contract claim against the developer with which Plaintiff contracted and to whom Plaintiff submitted the invoices that were allegedly never paid.  Instead, Plaintiff's Amended Complaint embodies a scattershot attempt to hold essentially everyone associated in any way with the failed project accountable for its losses.  These would include the developer (Bridgeview Crossing, LLC), the developer's managing members (David B. Snider Trust and Cannata Bridgeview

Crossing, LLC (collectively, "Snider-Cannata")), the individual managers of the project (David B. Snider and Sam P. Cannata), the city in which the project is located (Garfield Heights, Ohio), the bank that provided funding for the project (Huntington National Bank), the issuers of the municipal bonds (Cleveland/Cuyahoga County Port Authority), and the bond underwriter (Baird).

This Court should not indulge Plaintiff by allowing it to proceed with its meritless claims against Baird. Instead, it should recognize the claims for what they are: desperate attempts to hold a potentially deep pocket accountable by trying to manufacture a duty of care, imagining a conspiracy, and fabricating a RICO claim. A contractor working on a project like this has numerous, proper means of protecting itself against, or recovering for, non-payment, and none is as attenuated – by several degrees – as the theories advanced here against Baird.

## II.  <u>RELEVANT FACTS</u>

In December of 2006 Plaintiff agreed to complete the Bridgeview Project, which consisted of public and private infrastructure work for the construction of a large retail shopping center (Bridgeview Crossing) located in the City of Garfield Heights. (Amended Complaint at ¶ 50 and ¶ 16). Huntington National Bank ("Huntington") financed the Bridgeview Project via a construction loan, and additional funding was expected to include proceeds from municipal bonds issued by the Cleveland-Cuyahoga County Port Authority (the "Port Authority") and revenue generated by a series of Tax Incremental Financing ("TIF") Ordinances passed by Garfield Heights. No TIF revenue was expected until at least 2010 (Amended Complaint at ¶¶ 32-34), and the Port Authority did not approve issuance of the bonds until May 2008, meaning no bond revenue could be expected until 2009, at the earliest. (Amended Complaint at ¶ 37).

Pursuant to a contract with Bridgeview Crossing, LLC, Plaintiff began work on the Bridgeview Project on December 12, 2006. (Amended Complaint at ¶ 50). Plaintiff

2

regularly submitted invoices to Bridgeview Crossing, LLC and Snider-Cannata for services and materials, but these were not paid.  (Amended Complaint at ¶¶ 54-55.)  For the next *two years,* Plaintiff continued to work on the Bridgeview Project even though it knew that its invoices were not being paid (and had never been paid); it knew that, even if all exigencies aligned, TIF revenue would not be available until 2010; it knew that the Port Authority had neither approved of nor issued municipal bonds in 2006 (and such approval and issuance would not be immediately forthcoming); and it knew that Huntington had agreed to multiple loan modifications in order to keep the Bridgeview Project afloat.  (Id. and Amended Complaint at ¶ 29).

In May of 2008 the Port Authority approved issuance of the municipal bonds. (Amended Complaint at ¶ 37).  Quite unexpectedly, on October 14, 2008, the Auditor of the State of Ohio declared Garfield Heights to be in a state of fiscal emergency.  (Amended Complaint at ¶ 46.)  Then, after Plaintiff had accumulated more than 2 years of unpaid invoices, Baird met with the State Auditor and declared, after due diligence and investigation, that pending the creation of a Financial Planning and Supervision Commission, Garfield Heights and the Port Authority should continue forward with the Bond Issue.  (Amended Complaint at ¶¶ 38, 45, and 48, citing Baird's October 23, 2008 Preliminary Offering Statement.)  However, the bonds never issued.  (Amended Complaint at ¶ 60.)

Huntington declared the Bridgeview Project construction loan in default, and obtained a judgment against Bridgeview Project, LLC and Snider-Cannata in January of 2009. (Amended Complaint at ¶ 60.)  But Plaintiff waited *another eight months*, until September of 2009 to file a Complaint.  Therein, it claimed to have suffered losses not only due to various contractual breaches but also because the municipal bonds had never issued.  (Amended

Complaint at ¶ 42.)  And that failure, alleged Plaintiff, could be attributed not only to various individual failings (pleaded via negligence and intentional tort actions), but also to the coordinated efforts of the private entities with which Plaintiff had contracted to complete the Bridgeview Project, the bank that financed the project, the city that agreed to finance the project partly through public funds, the entity that agreed to issue municipal bonds, and the bond underwriter (pled via civil conspiracy and RICO claims).  Plaintiff pursued these avenues of relief despite the fact that the unpaid excavation work at issue was completed months and years *before* any of the bond money would be available even under the rosiest of expectations.

On September 16, 2009, this Court, *sua sponte*, entered a show-cause order requiring the Plaintiff to file an amended complaint curing deficiencies in its attempt to plead a RICO claim.  Plaintiff filed its Amended Complaint on October 15, 2009.

## III.    LAW AND ARGUMENT

A motion to dismiss for failure to state a claim upon which relief may be granted, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, should be granted when plaintiffs can prove no set of facts in support of the claims raised that would entitle them to the relief sought, even when taking the allegations in the complaint as true and construing them liberally in favor of the plaintiffs.  *Burton v. Cleveland Empowerment Zone Office*, 271 F. Supp.2d 1034, 1038 (N.D. Ohio 2003).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thus, while a court cannot grant a Rule 12(b)(6) motion simply because it does not believe a plaintiff's factual allegations, it also need not accept as true legal conclusions or unwarranted factual inferences.  *Morgan v. Chruch's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).

4

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and as confirmed by *Iqbal*, Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff allege in its complaint "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To meet this standard, and thereby survive a motion to dismiss, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Id.* In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, and *Iqbal* at 1949.

This means that to survive a motion to dismiss, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 129 S. Ct. at 1950, quoting *Twombly*, 550 U.S. at 555 (2007). Instead, a plaintiff's ground for relief "requires more than labels and conclusions," and neither "a formulaic recitation of the elements of a cause of action" nor "naked assertions . . . devoid of further factual enhancement" will do. *Bell Atlantic v. Twombly*, 550 U.S. at 555.

It also means that when considering a motion to dismiss, a court should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Then, if any well-pled factual allegations remain, the court can determine whether they plausibly give rise to an entitlement to relief. *Id.*

As set forth below, Plaintiff's claims against Baird do not meet the *Iqbal* and *Twombly* pleading standard and should be dismissed.

### A.    Count XIV of the Amended Complaint Alleging Negligence Must Be Dismissed.

In Count XIV of the Amended Complaint, Plaintiff alleges that "Defendant Baird had a duty to Independence, the City, the Port Authority, and the State of Ohio to make certain that the Bond Issue was properly underwritten and that any representations made to each of the noted entities, as well as those specifically set forth in the Preliminary Offering Statement

5

("POS") were accurate."  (Amended Complaint at ¶¶ 212 and 220.)  Plaintiff also alleges that Baird failed to disclose various facts to Plaintiff.  (Amended Complaint at ¶ 220.)  But, as shown below, Baird, the bond underwriter, owed no special duty to Plaintiff; therefore, the negligence claim must be dismissed.

An action for negligence in Ohio includes three essential elements: (1) the existence of a duty owing by the defendant to the plaintiff; (2) the defendant's failure to discharge that duty; and (3) injury to the plaintiff proximately resulting from such failure.  The existence of a duty is a matter of law for the court to decide, *McGill v. Newark Surgery Ctr.*, 756 N.E.2d 762, 777 (Licking Cty 2001), and can arise by contract or by operation of law.  *Hadfield-Penfield Steel Co. v. Sheller*, 108 Ohio St. 106 (1923).

It is undisputed that Plaintiff and Baird were not contracting parties.  Even if they were, in Ohio a party to a business transaction has a duty to disclose only when a special relationship exists.  *Interim Healthcare of Northeast Ohio, Inc. v. Interim Services, Inc.*, 12 F.Supp.2d 703, 712 (N.D. Ohio 1998).   There is absolutely no relationship – let alone a special or legally significant one – between Baird, the bond underwriter, and Plaintiff, a contractor working on the Bridgeview Project.  Nor does the Amended Complaint contain any allegations that suggest any special relationship, privity or interaction between Baird and Plaintiff.

Nor did a duty running from Baird to Plaintiff arise under operation of law.  Courts do not impose upon underwriters "a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions."  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 58, 960 P.2d 513 (Cal. App. 1998).  In Ohio, as elsewhere, the only duty that a bond underwriter owes to a third party non-investor, such as Plaintiff, is to

perform due diligence.  *See, e.g.* SEC Release No. 34-26100[1] (Sept. 28, 1988), interpreting 15 U.S.C. § 77k(c) (stating that underwriters have a duty to form a reasonable belief in the accuracy and completeness of any "key representations" in disclosure documents, and that underwriters are relieved of liability with respect to any errors therein so long as they have made a reasonable investigation and performed a due diligence review); *see also Waltz v. Badger Technology,* 2003 Cal. App. Unpub. LEXIS 7544, *28 (Cal. App.  August 5, 2003) (the SEC "does not require an underwriter to guarantee the success of [a] project or the expectations of third parties who may be interested in the project.  Rather, it requires an underwriter to review disclosure documents to the extent that it necessary to develop a reasonable basis for recommending securities to buyers of those securities").

Here, Plaintiff does not suggest that Baird did not comply with the due diligence requirement.  Instead, it fabricates some sort of special duty that Baird allegedly owed to it. (Amended Complaint at ¶ 220.)  But the bare fact that Baird was associated with the Bridgeview Project, as was Plaintiff, does not mean a "special relationship" was created between Baird and Plaintiff.

Absent a special relationship, Ohio does not impose a duty of care upon defendants like Baird because there is no way that such a defendant could foresee that its actions would injure an unrelated third party.  *See, e.g., Abrams v. Worthington*, 169 Ohio App. 3d 94 (Franklin Cty. 2006) (the existence of a duty, for purposes of a negligence claim, depends upon the foreseeability of injury to the plaintiff"); *see also Simmers v. Bentley Constr. Co.*, 64 Ohio St. 3d 642, 645 ("the existence of duty largely depends on the foreseeability of injury"); *Gedeon v. East Ohio Gas Co.*, 128 Oho St. 335, 338 (Ohio 1934) ("No one is bound to take care to prevent consequences which, in the light of human experience, are beyond the range of probability").

---

[1]  Attached as Exhibit A.

And, "even if an injury [to a third party] is foreseeable, a defendant has no duty to protect a plaintiff from or to control the conduct of a third person." *Abrams* at *16 (internal citations omitted).  In other words, Baird cannot be held liable for the developer's decision not to pay Plaintiff, or for the bank's decision to hold the developer responsible for defaulting on the construction loan, or for the fact that the Port Authority decided not to issue the bonds for the funding of the Bridgeview Project – all discretionary decisions outside of Baird's control that render foreseeability impossible as matter of law.

In situations similar to this, courts around the country have held that municipal bond underwriters like Baird owe no duty to third party, non-investor plaintiffs such as Plaintiff. In *Waltz v. Badger Technology,* 2003 Cal. App. LEXIS 7544 (Cal. App.  August 5, 2003), [2] the plaintiff owned a parcel of land that was within an area to be developed by private investors pursuant to an agreement with the City of Wheatland, California, with additional funding provided by TIF districts and municipal bonds underwritten by defendant.  The project stalled, and the developer that had agreed to purchase plaintiff's parcel backed out of the deal.  Plaintiff sued the developer, the city, and the underwriter individually, and also alleged RICO violations against all three entities.  Plaintiff's individual claims against the underwriter were premised on the supposition that the underwriter owed her a duty of care, which it breached when it advised going forward with the bond issue.

The court held that the underwriter did not owe a duty of care to plaintiff. "[Plaintiff's] expectations were intimately tied to [the developer's] expectations," said the court, and "the failure of [the developer's] expectations was part of [plaintiff's] ordinary investment risk, which is generally not compensable in tort." *Id.* at *22-23.  Moreover, the project failed because of "the collapse of the real estate market," which was "beyond that control of anyone,

_____

[2]  Unreported cases cited herein are collected in Exhibit B.

including the underwriter." *Id.* at *24 and *26. Finally, the plaintiff's attempt to "impose duties and liabilities upon an underwriter" would make "an underwriter [subject] to suit for anyone's failed expectations" with respect to financing via municipal bonds and special assessment districts. *Id.* at *29. This result would be both absurd – "an underwriter would become responsible not only for reviewing the accuracy and completeness of disclosure documents, but for ensuring the success of the project and for third party expectations based thereon" – and also bad public policy – "the expansive duties and corresponding liability that appellant would impose upon underwriters would likely cause many investment firms to refuse to underwrite" municipal bond offerings. *Id.*

The very same tenets apply to Plaintiff's allegations against Baird here. Performing work at the outset of a development project where substantial contingencies still exist necessarily carries business risk. That risk can be mitigated by bonds, liens, guarantees, and construction financing, and by ensuring that the developer is sound. Plaintiff apparently chose not to utilize these ordinary, expected means of mitigation. Baird had no obligations either to ensure that the bonds would issue or that the project would be successful.

**B.     Count XV of the Amended Complaint Alleging Intentional Misrepresentation Must Be Dismissed.**

In Count XV of the Amended Complaint, Plaintiff alleges that Baird "made intentional misrepresentations" to Independence, the City of Garfield Heights, the Port Authority, and the State of Ohio. (Amended Complaint at ¶ 220.) Specifically, Plaintiff alleges that Baird intentionally: (1) "failed to place Independence, the City, the Port Authority, and the State of Ohio on notice" that the amount expended on the Bridgeview Project exceeded the amount listed in the POS's financial projections; (2) "failed to report" that there was litigation pending on the Bridgeview Project, including that Huntington was the subject of a lawsuit

9

involving the Bridgeview Project; (3) failed to advise Independence, the City, the Port Authority, and the State of Ohio "that the Bond Issue should not proceed"; (4) failed "to take into account the true value of the proximity of the City Center"; (5) failed "to insure the integrity of its financial projections"; and (6) failed to "fully advise the Port Authority, and the State of Ohio of the need to compensate contractors and subcontractors working on the Project."  (Id.)  Plaintiff asks the Court to infer some connection between these allegations and Plaintiff not getting paid for construction work it performed.

In order to state a claim for intentional misrepresentation in Ohio, a plaintiff must allege: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Foundation for Moral Law v. Infocision Mgmt. Corp.*, 2008 U.S. Dist. LEXIS 108117, *3-4 (N.D. Ohio May 27, 2008) (citing *Groob v. KeyBank*, 108 Ohio St. 3d 348, 357 (2006)); *see also Burr v. Stark Cty. Bd. of Comm'rs.*, 23 Ohio St. 3d 69 (1986).  Because, in Ohio, "fraud" and "intentional misrepresentation" claims are equivalent, intentional misrepresentation claims, too, must conform to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Foundation for Moral Law*, 2008 U.S. Dist. LEXIS 108117, *3-4.

Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Federal Rule of Civil Procedure 9(b).  The purpose of Rule 9(b) "is to provide fair notice to the defendant so as

to allow him [or her] to prepare an informed pleading responsive to the particular allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 322 (6th Cir. 1999) (citing *Michaels Bldg. Co., et. al. v. Ameritrust Co., et. al.*, 848 F.2d 674, 679 (6th Cir. 1988).

To accomplish this purpose, the Sixth Circuit requires plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). In other words, a plaintiff's complaint must contain, at a minimum, the "who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA*, 447 F.3d 873, 877 (6th Cir. 2006) (citing *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

### 1. Plaintiff has not adequately pled either representation or concealment of fact, a required element of an intentional misrepresentation claim.

The first element of intentional misrepresentation requires Plaintiff to show "a representation or, where there is a duty to disclose, concealment of a fact." *Groob v. KeyBank*, 108 Ohio St. 3d at 357. Here, Plaintiff alleges that Baird's intentional misrepresentations consisted of numerous failures to disclose or "concealment[s] of fact" regarding the viability of the Bridgeview Project and the bond issue. (See, e.g., Amended Complaint at ¶ 220, citing a series of Baird's alleged failures to disclose as proof that Baird made intentional misrepresentations.) As a matter of law and undisputed fact, Plaintiff's argument fails.

*Guarantee Co. v. City of Cleveland*, 1997 U.S. Dist. LEXIS 15285 (N.D. Ohio Sept. 24, 1997), is instructive. In that case, the City of Cleveland filed an intentional misrepresentation claim against the sureties of its contracting partner, arguing that the sureties, which had investigated the financial soundness of the principal before guaranteeing the

principal's performance, were liable to the City for wrongfully failing to disclose that the principal was not competent to perform under the contract.  *Id.* at 7.  The Northern District of Ohio held that the City failed to meet the first prong of an intentional misrepresentation claim – "'the concealment of fact' prong" – as a matter of fact and a matter of law.

First, the City's intentional misrepresentation claim failed as a matter of <u>law</u>. Even if the sureties knew that the principal could not perform under the contract, said the Court, they had no duty, contractual or otherwise, to disclose that information to the City.  *Id.* at 12. Second, the City's intentional misrepresentation claim failed as matter of <u>fact</u>.  The information that the sureties allegedly withheld from the City, said the Court, "was ascertainable upon reasonable investigation and soon after construction it was obvious to both the surety … and the City that [the principal] was incapable of proceeding in an acceptable manner under the contract." *Id.* at 13.  Any failure to disclose, therefore, was not a "concealment." *Id.* at 14.

Here, as in *Guarantee Co. v. City of Cleveland*, Baird did not owe a duty to Plaintiff, contractual or otherwise.  It is undisputed that Baird and Plaintiff were not in privity.  It is also undisputed that the POS specifically disclaimed any guarantee of accuracy.  (POS, attached as Exhibit A to Plaintiff's Original Complaint,[3] at i (stating the information in the POS is "not guaranteed as to accuracy or completeness") and 59 (discussing how the risks associated with changes in market conditions "could adversely effect the value of property and the level of economic activity at the Development Site").)  Finally, as demonstrated above, bond underwriters do not owe any special duty to Independence or any other member of the public. Therefore, as a matter of law Plaintiff fails to meet the "concealment" prong of an intentional misrepresentation claim.

---

[3] The first page of the POS was attached to the original Complaint and is central to Independence's claim.  Thus, the POS is properly before the court for the purposes of this motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).  The full text of the POS (without appendices) is attached to this brief as Exhibit C.

Likewise, the undisputed facts here, as in *Guarantee Co. v. City of Cleveland*, make it clear that there was no "concealment."  Plaintiff started work in 2006, began submitting invoices, and was never paid for them.  (Amended Complaint ¶¶ 50-54.)  Despite the fact that its unpaid invoices were piling up, Plaintiff continued to work on the Bridgeview Project.  (Id.)  It was a matter of public record that the nearby City View project was not doing well, and it was also a matter of public record that the Bridgeview Project was not meeting certain requirements of its construction loan, including finalizing leasing arrangements with anchor stores.  (Id.).  Additionally, the fact that Garfield Heights was in fiscal emergency was publicly known before Baird issued the POS upon which Plaintiff now alleges it relied and in which Plaintiff claims Baird "intentionally misrepresented" the viability of municipal bonds.  For these reasons, as was the case in *Guarantee Co. v. City of Cleveland*, there could be no "concealment" here.

And finally, even if the Court finds that Plaintiff has alleged not only a "concealment of fact," but also that Baird made affirmative "representation[s] of fact" regarding the viability of the Bridgeview Project or Garfield Heights's ability to service municipal bonds associated with the project, Plaintiff still cannot satisfy the first element of an intentional misrepresentation claim.  *Groob v. KeyBank*, 108 Ohio St. 3d at 357 (stating that a plaintiff must show either a representation of fact or, where there is a duty to disclose, concealment of a fact to satisfy the first prong of an intentional misrepresentation claim).  None of the alleged misrepresentations made by Baird, including statements made in the POS, constitute "representations of fact" made to Plaintiff.

First, as noted above, Baird never made any representations to Plaintiff, and prior to this lawsuit had no relationship at all with Plaintiff.  But, more importantly, Baird made clear that all statements it made in the POS were merely opinions; that the information in the POS was

13

not guaranteed as to accuracy or completeness; and that any such statements or information "must not be relied upon." (POS at i.) To the extent Plaintiff drew any conclusions from the opinions Baird offered, it did so at its own risk. *See, e.g., Guarantee Co.*, 1997 U.S. Dist. LEXIS at *17, citing *Deloach*, 708 F.Supp. at 1378 ("the research effort [the surety] expended [to determine the co-principals' financial competence] were solely for [the surety's] own purposes; it assumed no obligation to inform others of [the co-principals'] merits or infirmities. If the [co-principals] drew the conclusion that the investment would prosper from [the surety's] guarantee of [the co-principals'] own promises to pay, [the co-principals] did so at their own risk").

### 2. Plaintiff has not adequately pled justifiable reliance, a required element of an intentional misrepresentation claim.

Even assuming arguendo that Plaintiff did, in fact, rely on some misrepresentation made by Baird before it performed the construction work for which it now seeks reimbursement (an assumption that is completely unwarranted), Plaintiff can allege no set of facts under which such reliance would have been justified – an essential element of an intentional misrepresentation claim. Therefore, Plaintiff's intentional misrepresentation claim must be dismissed. *Groob v. KeyBank*, 108 Ohio St. 3d at 357.

Baird and Plaintiff had no relationship; in fact, Baird never made any statements of any type to Plaintiff, nor has Independent pled that it had any contact with Baird prior to this lawsuit. Plaintiff was not a prospective offeree of the contemplated bonds – the persons to whom a POS, by its very definition, is targeted. Perhaps the biggest flaw in Plaintiff's putative claim is the disconnection in its timeline of allegations: by the time Baird issued the POS containing the alleged misrepresentations and concealments in summer 2008, Plaintiff had already entered into a contract with Bridgeview Crossing, LLC and the Snider-Cannata interests to perform construction work, and Plaintiff already had run up an account payable with the

developers into the millions of dollars that was months old.  If its complaint is believed, Plaintiff had more early, firsthand knowledge than anybody (including Baird) that project cash flow was a problem.

Further still, even if Baird and Plaintiff were in the required type of relationship that would support a finding of reasonableness of reliance on other subject matters, statements as to the financial status or solvency of a third person are only actionable if they are "certain and definite," *Ullmo ex rel. Ullmo v. Gilmour Academy*, 273 F.3d 671 (6th Cir. 2001), and "more than mere expressions of opinion."  *Central States Stamping Co. v. Terminal Equipment Co., Inc.*, 727 F.2d 1405 (6th Cir. 1984).  The exact opposite is true here: Baird never guaranteed any "representations" it made and, instead, made clear that it was only offering opinions.  (See, e.g., POS at i.)  And, because Baird's statements regarding the viability of the Bridgeview Project and the ability of Garfield Heights to perform under the Cooperative Agreement were mere "predications" relating to future actions or conduct, they are not the sort of statements upon which a claim of fraud or intentional misrepresentation can be predicated.  *Martin v. Ohio State Univ. Found.*, 139 Ohio App. 3d 89, 98 (Franklin Cty. 2000) (claims of fraud cannot be predicated upon "predications" or representations relating to future action or conduct).

### 3. Plaintiff has not adequately pled that Baird was the proximate cause of its injuries, a required element of an intentional misrepresentation claim.

Plaintiff is required to plead not only that it was injured but that Baird's intentional misrepresentations were the proximate cause of that injury.  *Burr*, 23 Ohio St. 3d at 69.  Here, Plaintiff's injuries stem entirely from a contract that it entered into with Bridgeview Crossing, LLC and the Snider-Cannata interests in 2006.  The timeline of the pleaded facts makes any suggestion of causation not just implausible, but impossible.  Independence cannot credibly allege that it was damaged via non-payment for work commenced in 2006 as a result of

15

any statements (or nonstatements) made by Baird in the POS dated more than two years later, October 23, 2008.  (*See* Amended Complaint at ¶¶ 230-236.)  The very purpose of interim construction financing from private sources (i.e., banks) is to provide a means for payment to contractors doing initial work while more permanent financing gets finalized, if ever.  Any optimistic assumption by Plaintiff that more permanent financing would be arriving later could not have caused it any damages.  Mechanic's liens, construction bonds and other mechanisms exist to deal with the risk incurred by initial-stage contractors that planned permanent financing does not materialize.  Nowhere does Plaintiff allege how Baird's statements, made two years after Plaintiff began work under a contract to which Baird is not a party, was the proximate cause of Plaintiff's decision to enter into that contract and to continue performing under it even though it was not being paid for work already performed.  For this reason alone Plaintiff's intentional misrepresentation claim must fail.

> **4.    Plaintiff has not pled its intentional misrepresentation claim with the required particularity.**

Even if the Court does not accept the argument that Plaintiff failed to plead adequately each of the required elements of its intentional misrepresentation claim, Plaintiff's claim fails because it was not pled with the required particularity pursuant to Federal Rule of Civil Procedure 9(b).  At a minimum, the Sixth Circuit requires that, to comply with Rule 9(b), a plaintiff's complaint contain the "who, what, when, where, and how of the alleged fraud." *Sanderson,* 447 F.3d at 877 (6th Cir. 2006).  Even reading Plaintiff's Amended Complaint liberally, it has failed to meet this requirement.

Giving Plaintiff the benefit of the doubt, it has only included in its Amended Complaint the "what" requirement of the alleged fraud - - that Baird, in its POS, either failed to disclose material facts or affirmatively misled Plaintiff regarding the viability of the Bridgeview

Project and Garfield Height's ability to perform under the Operating Agreement. (Amended Complaint at ¶ 220.) But Plaintiff never identified to whom at Independence Baird made the alleged misrepresentations; when someone at Independence actually saw, and therefore relied upon, Baird's alleged misrepresentations; and how, specifically, anything Baird said in a POS dated almost two years after Independence entered into the contract to perform construction work for the Bridgeview Project could possibly have caused Independence to be injured.

Plaintiff's Amended Complaint does not even include an allegation that someone at Independence actually *read* the contents of the POS at a time prior to its decision to file this lawsuit, let alone the required sort of detailed allegations that would allow Baird to prepare an "informed pleading responsive to the specific allegations of fraud." *Advocacy Organization for Patients and Providers*, 176 F.3d at 3d 22. Even if it were true that Plaintiff entered into a contract with Bridgeview Crossing LLC and the Snider-Cannata interests only because it *assumed* that proceeds from municipal bonds would help pay the bills it submitted to its contracting partners, Plaintiff has failed to allege how Baird's actions could have induced such an assumption.

## C. Count XVI of the Amended Complaint Alleging Civil Conspiracy Must Be Dismissed.

For its civil conspiracy claim, Plaintiff makes only one allegation: that Baird conspired with the other defendants "to misappropriate the value of Independence's services in completing the infrastructure work on the Bridgeview Project." (Amended Complaint at ¶ 228.) That "naked assertion[] … devoid of further factual enhancement" means that Plaintiff has failed to plead multiple required elements, let alone plead them in such a way as to meet the *Iqbal/Twombly* standard. Therefore, Plaintiff's civil conspiracy claim must be dismissed. *Twombly*, 550 U.S. at 555.

17

"Civil conspiracy" under Ohio law is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Hollar v. Philip Morris Inc*., 43 F. Supp. 2d 794, 810 (N.D. Ohio 1998) (citing *Minarik v. Nagy*, 8 Ohio App. 2d 194, 196, 193 N.E.2d 280 (Cuyahoga App. 1963)).  Thus, in order to establish a claim of civil conspiracy, the following elements must be proven: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. Ohio 2000), citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993). Finally, there must be actual damages attributable to a conspiracy in addition to damages caused by the underlying tort.  *Williams v. Aetna Fin. Co*., 83 Ohio St. 3d 464, 700 N.E.2d 859 (1998).

The only element of conspiracy that Plaintiff pled with sufficiency is the second - - that two or more persons were involved.  Plaintiff attempted to plead "malicious combination," the first element of conspiracy, by stating that defendants were acting in concert.  (Amended Complaint at ¶ 228; see also id. at ¶¶ 65 and 69 (alleging that the defendants "colluded" to make misrepresentations about the viability of the Bridgeview Project and the issuance of municipal bonds)).  But this element was not pled in such a way as to "nudge[] [Plaintiff's] claim[] across the line from conceivable to plausible" as required by *Twombly*, 550 U.S. at 570.

To satisfy the *Iqbal/Twombly* pleading standard, it is not enough merely to recite, as Plaintiff does, past instances wherein Baird and the other defendants worked together on a municipal project.   (Amended Complaint at ¶¶ 62-65.)   Such allegations show merely association, not collusion for any illicit purpose.  None of Plaintiff's allegations make the alleged conspiracy between Baird and the other defendants to injure Plaintiff anything more than pure

18

speculation, particularly because it is undisputed that Baird never had, nor ever took steps to have, any sort of relationship, contractual or otherwise, with Plaintiff.  Baird had no involvement whatsoever in the bidding process for construction work on the Bridgeview Project.  And, Baird never directly communicated, solicited, or otherwise "induced" Plaintiff to accept a contract to work on the Bridgeview Project more than two years before Baird issued its POS.  Plaintiff's allegations of conspiracy, in other words, are precisely the sort of "unwarranted factual inferences" that the Sixth Circuit has said courts "need not accept as true." *Morgan v. Chruch's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).

Plaintiff also failed to plead adequately an injury attributable to the conspiracy, the third required element of conspiracy.  In fact, Plaintiff did not allege any evidence whatsoever that it suffered an injury that is attributable to the conspiracy, as opposed to the injuries allegedly caused by the underlying tort.  *Williams*., 83 Ohio St. 3d at 863.

Lastly, because a conspiracy cannot be made the subject of a civil action "unless something is done that, in the absence of the conspiracy allegation, would give rise to a cause of action," the viability of Plaintiff's conspiracy claim is dependent upon the viability of Plaintiff's underlying tort claim.  *Palmer v. Westmeyer*, 48 Ohio App. 3d 296 (Lucas Cty 1988); *see also Gosden v. Louis*, 116 Ohio App. 3d 195, 219, 687 N.E.2d 481 (Ohio Ct. App. 1996) (an underlying tort is required in order for a civil conspiracy claim to be successful).  The negligence, intentional misrepresentation, and conversion claims pled by Plaintiff in the Amended Complaint could potentially serve as the tort underlying a claim for conspiracy.  *Williams v. ITT Financial Services*, 1997 Ohio App. LEXIS 2721, *11 (Hamilton App. 1997).  However the fact that Plaintiff failed to plead any of those torts sufficiently (as shown in this brief) is fatal to Plaintiff's conspiracy claim.

**D.      Count  XVII of the Amended Complaint, the RICO Claim, Must Be Dismissed.**

Count XVII of the Amended Complaint is a civil RICO claim alleging that the defendants participated in an enterprise for the purpose of "executing and attempting to execute the scheme of finance through the use of public bond funds and the Bond Issue" and "financing [] the Bridgeview Project, by means of false representations, conversions, misappropriation and concealment.  (Amended Complaint at ¶ 232.)   Plaintiff's RICO claim must be dismissed because Plaintiff (1) fails to plead the requisite predicate acts with specificity, (2) fails to state a claim under 18 U.S.C. § 1962(b); and (3) fails to state a claim under 18 U.S.C. § 1962(c).

"Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device," *Miranda v. Ponce*, 948 F.2d 41, 44 (1st Cir. 1999), because the mere assertion of a RICO claim has an "inevitable stigmatizing effect on those named as defendants." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  Therefore, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.*

This Court showed concern that Plaintiff's Amended Complaint contains precisely the sort of faulty allegations that need to be disposed of early in the litigation when, *sua sponte*, it entered a show-cause order requiring the Plaintiff to file an amended complaint curing deficiencies in its initial attempt to plead RICO violations. But despite its length, Plaintiff's Amended Complaint still does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*).

**1.      Plaintiff fails to plead the alleged predicate acts adequately.**

The predicate acts upon which Plaintiff bases its RICO claims under § 1962(b) and § 1962(c) are allegations of mail and wire fraud and other fraudulent misrepresentations. (Amended Complaint ¶¶ 235 and 239.)  These allegations are subject to the heightened pleading

standards of Federal Rule of Civil Procedure 9(b).  *See Leeds v. City of Muldraugh*, 174 Fed. Appx. 251, 254 (6th Cir. 2006) (mail fraud allegations in a RICO complaint must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b); *Infocision Mgmt. Corp. v. Found. For Moral Law, Inc.*, 2009 U.S. Dist. LEXIS 23640 at * 20 (N.D. Ohio Jan. 14, 2009) ("Rule 9(b) applies to the pleading of predicate offenses sounding in fraud") (citations omitted); *Fed. Ins. Co. v. Webne*, 513 F. Supp.2d 921, 926 (N.D. Ohio 2007) (heightened pleading requirements apply to RICO claims alleging the predicate act of mail fraud); *accord Found. For Moral Law v. Infocision Mgmt. Corp,* 2008 U.S. Dist. LEXIS 108117 at * 29 (N.D. Ohio May 27, 2008).

Here Plaintiff alleged that Baird engaged in mail and wire fraud as RICO predicate acts but failed to allege any particular use of mail or wire services.  Instead, the Amended Complaint states that "fund transfers would have occurred across state lines as, among other things, acts of (1) Mail Fraud, 18 U.S.C. § 1341; and (2) Wire Fraud, as Defendant Baird was conducting certain components of the enterprise from the State of Missouri."  (Amended Complaint at ¶ 235.)  But Plaintiff does not point to any particular fund transfer that actually occurred across state lines, does not provide the date of any alleged fraudulent transfer, and does not indicate who transferred such funds, or who received them.

Similarly, the Amended Complaint states that the enterprise made various fraudulent misrepresentations in connection with the Bridgeview Project.  (Amended Complaint at ¶ 239).  The listed misrepresentations duplicate the acts that Plaintiff complained of in its claims for negligence, intentional misrepresentation, and conversion – allegations that, as previously discussed, Plaintiff failed to plead with particularity which are implausible on their face.  Plaintiff's RICO claims suffer from the same failure as those earlier claims - - this Court and the Defendants are not told anything specific about the misrepresentations, including by

whom such representations were made; to whom such representations were made; and how such misrepresentations are connected to any injuries cased to Plaintiff. This lack of particularity is fatal to Plaintiff's RICO claim. *See, e.g.*, *Found. for Moral Law*, 2008 U.S. Dist. LEXIS 108177 at *32 (dismissing a RICO claim for failing to allege predicate fraudulent acts with specificity); *accord Fed. Ins. Co. v. Webne*, 513 F.Supp.2d 921, 926 (N.D. Ohio 2007).

### 2. Plaintiff fails to state a claim for a RICO section 1962(b) claim.

To state a RICO claim under § 1962(b), a plaintiff must plead facts establishing that a defendant (1) acquired or maintained (2) through a "pattern of racketeering activity" or the "collection of unlawful debt" (3) an interest in or control of an "enterprise" (4) engaged in, or the activities of which affect, interstate or foreign commerce. *Advocacy Org. for Patients v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 322 (6th Cir. 1999).

### a. Plaintiff did not adequately plead acquisition or maintenance of an interest or control of an "enterprise."

A violation of § 1962(b) requires that the RICO defendant acquire or maintain an interest in, or control of, an enterprise through (or by way of) the pattern of racketeering activity. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315 (6th Cir. 1999); *see also Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91-92 (1st Cir. 1995). Here, similar to the complaint in *Advocacy Corp.*, Plaintiff's RICO count is completely devoid of any information as to how Defendants acquired or maintained an interest in or control of the "enterprise."

### b. Plaintiff did not adequately allege the existence of an "enterprise."

Plaintiff's failure to plead acquisition or maintenance of an interest in the enterprise can be explained by the fact that Plaintiff also failed to allege an "enterprise," as required under any subsection of § 1962.

A RICO enterprise consists of either (1) an "individual, partnership, corporation, association or other legal entity;" or (2) a "union or group of persons associated in fact."  18 U.S.C. §1961(4).  An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" which "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *U. S. v. Turkette*, 452 U.S. 576, 583 (1976).  And "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. U. S.*, 129 S.Ct. 2237, 2244 (2009).  If the allegation of "common purpose" is purely conclusory, the RICO claim must fail.  *See, e.g., Twombly* (rejecting a conclusory allegation of conspiracy contained in a very detailed complaint).  Finally, there must be a "nexus … between the enterprise and the racketeering activity that is being conducted." *First Capital Asset Mgmt., Inc. v. Satinwood*, 385 F.3d 159, 173 (2d Cir. 2004).

As an initial matter, only an "entity," not an "association in fact," can form the enterprise referred to in § 1962(b).  *NOW v. Scheidler*, 510 U.S. 249, 259 (1994) ("the 'enterprise' referred to in subsections [1962] (a) and (b) . . . [must] be an entity that was acquired through illegal activity or the money generated from illegal activity").  Plaintiff alleges only an association in fact, and does not even attempt to allege the existence of an entity.  For that reason alone, the § 1962(b) claim must fail.

Even if an association in fact enterprise could form the basis of a § 1962(b) claim, the allegations in Plaintiff's Amended Complaint are not adequate to support such a claim. Plaintiff alleges an enterprise consisting of all defendants, and that together they constituted association-in-fact enterprises.  (Amended Complaint at ¶ 232.)   But this alleged "enterprise" is

nothing more than a collection of persons and entities associated in some way with the Bridgeview Project.  The alleged "purpose" of the enterprise – "to execute a scheme of finance through the use of public bond funds and the Bond Issue" (Amended Complaint at ¶ 233) – is not alleged with particularity; rather, it is presented as a "mere legal conclusion." *Twombly* at 550.

In addition, there is no relationship between and among the defendants, as is required, *Boyle* at 2244; *Turkette* at 583.  They are simply a fluid group of entities working together to get the Bridgeview Project up and running.  In similar circumstances, the Sixth Circuit and the Northern District of Ohio ruled that there was no RICO enterprise. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699-700 (6th Cir. 2000) (finding the defendant lender and other secondary lenders was "too unstable and fluid an entity" and dismissing the RICO claim); *Cleveland Woodhill Supply Co., Inc.*, 403 F.Supp.2d 631, 635-637 (N.D. Ohio 2005) (dismissing RICO claim against a plumbing supply company that allegedly conspired with city employees to overcharge the City of Cleveland because no structure or organization was alleged); *Javitch v. Capwill*, 284 F.Supp.2d 848, 857 (N.D. Ohio 2003) (alleged enterprise involving a wrongdoer and his brokerage firm was insufficient because the allegations "point[ed] to nothing more than a business relationship" and did not suggest an organization that could function as a racketeering organization for other purposes).

Moreover, there is nothing illicit or untoward about entities working together to develop and finance a municipal project.  Plaintiff alleged that the defendants accomplished the financing through misrepresentations and false statements, but, as shown above, Plaintiff did not allege any such acts with the specificity required by Rule 9(b); therefore, those allegations do not "raise a right to relief above the speculative level."  *Twombly* at 555; *Iqbal* at 1949.  Nothing

more than typical arm's-length transactions is alleged, and certainly not with requisite specificity.

><b>c.</b>  <b>Plaintiff has not adequately pled a "pattern of racketeering activity."</b>

Plaintiff also failed to allege a pattern of racketeering activity.  To establish a pattern of racketeering activity, a plaintiff must allege "more than just a multiplicity of racketeering predicates."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989).  A plaintiff must show that (1) the racketeering predicates are related (the "relatedness" requirement), and (2) they pose a threat of continued criminal activity (the "continuity" requirement).  *Id.* at 239.

Continuity means either a closed period of repeated conduct (closed-ended continuity) or past conduct that by its nature projects into the future with a threat of repetition (open-ended continuity).  *Id.* at 241.  A plaintiff may establish closed-ended continuity by proving a series of related predicate acts extending over a "substantial period of time."  *Id.* at 242.  According to the Sixth Circuit, whether a pattern exists is determined by the following factors:

> The length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better) and the number of perpetrators (the less the better).

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir. 1995).

Here, Plaintiff has not satisfied the relatedness requirement.  Plaintiff alleges the following requisite acts: a letter sent from Snider-Cannata to the City; evidence of loan modification agreements between Huntington and the developer; and alleged "representations" made by "the enterprise" to the City and Port Authority regarding the City View Project's

potential to draw traffic to the Bridgeview Project.  It is precisely the sort of "list of racketeering predicates" without an allegation adequately pleading how the acts relate to one another that *H.J. Inc. v. Nw. Bell Tel. Co.* held was not adequate to establish a pattern of racketeering activity.

Additionally, Plaintiff does not satisfy the continuity requirement.  Although Independence alleged that racketeering activity took place over a period of years, it did so only in a conclusory manner, by stating that from November 2006 through the present, the defendants were involved in an association in-fact enterprise that engaged in activities affecting interstate commerce Plaintiff failed, however, to provide any of the specific details of racketeering activity. (Amended Complaint at ¶ 232.)   Further, only one victim – Plaintiff – is alleged, and that victim alleges only one injury – the defendants' utilization of Plaintiff's Bridgeview Project improvements without paying for the same.  (Id. at ¶ 240.)

> **d.** **Plaintiff has not adequately pled injury to business or property "by reason of" a violation of § 1962(b).**

Finally, Plaintiff fails to allege that he was injured by reason of Defendants' acquisition or maintenance of an interest in or control of the enterprise.  *Advocacy Corp.*, 176 F.3d at 329.  The civil remedy created by § 1964(c) authorizes recovery only for injury that a plaintiff suffers "by reason of" the RICO violation; therefore, a complaint for violation of 1962(b) must allege an "acquisition or maintenance" injury separate and apart form the injury suffered as a result of the predicate acts of racketeering activity.  *Id.*; *see also Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991).

Here Plaintiff does exactly the opposite.  Plaintiff: claims injury "by reason of Defendants' violations of 18 U.S.C. § 1962(b) and (c)," and goes on to define that injury as being due to "the predicate acts constituting a pattern of racketeering activity."  (Amended Complaint at ¶ 240.)  The Sixth Circuit was faced with the same situation in *Advocacy Corp.*

26

when the plaintiffs alleged they suffered an injury resulting from the racketeering activity.  That Court affirmed dismissal of plaintiffs' RICO claim because plaintiffs failed to allege an injury resulting from the acquisition of an interest in or control of the alleged enterprise.

Here, as in *Advocacy Corp.*, the Amended Complaint is silent about any injury resulting from the acquisition of an interest in or control of the alleged enterprise.  Therefore, Plaintiff has failed to allege any facts sufficient to state a claim for violation of § 1962(b), and the Court should dismiss that claim.

### 3.    Plaintiff fails to state a claim for a RICO section 1962(c) claim.

"In order to establish a RICO violation under § 1962(c), a plaintiff . . . must allege and prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 439 (2d Cir. 2008).  In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the United States Supreme Court interpreted § 1962(c) to mean that a RICO defendant must have allegedly participated in the "operation or management" of the alleged RICO enterprise.  *Id.* at 117, 183.  In other words, "one must have some part in *directing* [the enterprise's] affairs."  *Id.* at 179 (emphasis added).

But the Amended Complaint does not allege that Baird played any part in managing, directing, or otherwise controlling the actions of the other defendants.  In fact, it is not clear from the Amended Complaint who, if anyone, allegedly coordinated the defendants' actions.  Such allegations fail the operation or management test.  *See, e.g., Lucas-Cooper v. Palmetto GBA*, 2006 U.S. Dist. LEXIS 77575, at *8, 30-32 (N.D. Ohio Oct. 25, 2006) (dismissing § 1962(c) claim against a bank that processed deposits because the complaint "does not allege any facts showing that [the bank] operated or managed the enterprise's affairs, but only that [the bank] acted in its capacity as a bank.").

27

### E. Count XVIII of the Amended Complaint Alleging Conversion Must Be Dismissed.

In Count XVIII of the Amended Complaint, Plaintiff alleges that each of the Defendants "wrongfully exerted dominion and control over the improvements completed by Independence on the Bridgeview property" and that Defendants "misappropriated, used, converted, acquired Independence's work and material for their own benefit without the authority to do so." (Amended Complaint at ¶ 242.)  Defendants, claim Plaintiff, were unjustly enriched "from those acts of conversion." (Id. at ¶ 243.)

"Conversion is [1] the wrongful exercise of dominion [2] over property to the exclusion of the rights of the owner, or withholding it from his possession [3] under a claim inconsistent with his rights." *Anthony v. Chi. Title Ins. Co.*, 2007 U.S. Dist. LEXIS 28028, *9 (S.D. Ohio Apr. 16, 2007), citing *Allan Nott Enters. v. Nicholas Starr Auto*, L.L.C., 110 Ohio St. 3d 112, 2006 Ohio 3819, 851 N.E.2d 479, 486 (Ohio 2006).  Further, a demand and refusal is required "to turn the otherwise lawful possession into an unlawful one by reason of a refusal to comply." *City of Findlay v. Hotels.com, L.P.,* 441 F.Supp.2d 855, 865 (N.D. Ohio 2006).

Beyond merely a "formulaic recitation" of the elements of a cause of action for conversion, Plaintiff has not pled any facts to suggest that Baird is in possession of either any improvements completed by Independence on the Bridgeview Project. *Twombly,* 550 U.S. at 555.  For this reason alone Plaintiff's conversion claim against Baird cannot lie.  Additionally, Plaintiff has failed to plead the required demand and refusal – in fact, the Amended Complaint fails to identify any communication between Plaintiff and Baird whatsoever.  For this additional reason, Plaintiff's conversion claim must be dismissed.

**F.**      **Count XIX of the Amended Complaint Alleging Equitable Subordination Must Be Dismissed.**

In Count XIX of the Amended Complaint, Plaintiff alleges that "any mortgage or judgment lien and/or security interest . . . with respect to the [Bridgeview] Project" held by any of the other Defendants is equitably subordinated to the interest of Independence.  (Amended Complaint at ¶ 245.)

Plaintiff has not pled, because it cannot, that Baird holds no such mortgage, judgment lien, or security interest.  More importantly, the doctrine of equitable subordination applies only in bankruptcy proceedings.  *See, e.g., Gaymar Indus. v. Firstmerit Bank*, 311 Fed. Appx. 814, 817 (6th Cir. 2009) ("Principles of equitable subordination do not apply to [a] case [where the] case is not in bankruptcy"), quoting *Gaff v. FDIC*, 919 F.2s 356 (6th Cir. 1998). Therefore, the Court must dismiss this claim.

## CONCLUSION

For the foregoing reasons, Defendant Robert W. Baird & Company is entitled to an order dismissing the claims against it in their entirety.

Respectfully submitted,

/s/John M. Alten
Jeffrey S. Dunlap
John M. Alten
**ULMER & BERNE LLP**
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
Telephone: (216) 583-7000
Facsimile:  (216) 583-7001
jdunlap@ulmer.com
jalten@ulmer.com

Attorneys for Defendant
Robert W. Baird & Company

## CERTIFICATION REGARDING TRACK SETTING
## AND PAGE LIMIT REQUIREMENT

I hereby certify that this case was assigned to the standard track.  I also certify that Defendant Robert W. Baird & Company's Memorandum in Support of its Motion to Dismiss complies with Judge Polster's Order of November 23, 2009, modifying the page limit requirements imposed by the Local Rules for standard track cases.

/s/John M. Alten
Jeffrey S. Dunlap
John M. Alten
**ULMER & BERNE LLP**
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
Telephone: (216) 583-7000
Facsimile:  (216) 583-7001
jdunlap@ulmer.com
jalten@ulmer.com

Attorneys for Defendant
Robert W. Baird & Company

## CERTIFICATE OF SERVICE

A true copy of the foregoing was served via the Court's ECF system on November 23, 2009.  All parties can access this filing through the ECF system.


/s/John M. Alten
One of the Attorneys for Defendant

1806831